IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In re:<br><br>Robert Terry Winfree,<br><br>Debtor<br>___________________________<br><br>TN Dental Professionals, P.C., and CPF Dental, LLC, d/b/a Marquee Dental Partners,<br><br>Plaintiffs/ Counter-Defendants,<br><br>vs.<br><br>Robert T. Winfree, D.D.S. and Olivia Winfree,<br><br>Defendants/ Counter-Plaintiffs. | Chapter 11<br><br>Case No. 3:20-01417<br>Judge Randal S. Mashburn<br><br>Adv. Proc. No. 3:20-90031 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In Re: Subpoena Served On<br><br>J.T. Palmer & Associates, LLC | Civil Action No. ___________ |

**Non-Party J.T. Palmer & Associates, LLC's Motion to Quash Subpoena Served by Plaintiffs TN Dental Professionals, P.C. and CPF Dental, LLC and Brief in Support Thereof**

## I. Relevant Background.

1. Non-Party J.T. Palmer & Associates, LLC ("JT Palmer") files this Motion to Quash, requesting the Court to quash a subpoena that Tennessee counsel for Tennessee Plaintiffs TN Dental Professionals, P.C. and CPF Dental, LLC ("Plaintiffs") issued and served on JT Palmer from the Bankruptcy Court for the Middle District of Tennessee. *See* Appendix to Motion to Quash, App. 02-08.[1]

2. The Subpoena purported to command production of "the following documents," directing JT Palmer to "See attached Exhibit A." App. 02 In the blank identifying the "place" for production, the Subpoena commanded, "Lexitas Legal, Attn: Raven Grandberry, 325 North St. Paul Street, # 1900, ***Dallas, TX*** 75201." *Id.* In the blank identifying the "Date and Time" for production, the Subpoena commanded "***June 16, 2020*** 5:0o p.m. CST." *Id.*

3. Attached to the Subpoena was an "Exhibit A," entitled "Attachment to Subpoena to JT Palmer and Associates, LLC." App. 05. Unlike the Subpoena, "Exhibit A" "requests" JT Palmer to produce the requested documents "within fourteen (14) days to [Plaintiffs'] counsel Waller Lansden Dortch & Davis, LLP, 511 Union Street, Suite 2700, Nashville, TN, 37219, Attention: Melissa Jones." *Id.*

4. Curiously, the Subpoena was actually issued by Plaintiffs' counsel ***two weeks earlier***, on Tuesday, June 2, 2020. App. 02. And for reasons unknown to JT Palmer, the Subpoena did not make its way into the hands of Plaintiffs' process server until Thursday, June 11. App. 03.

[1] Cites to the Appendix will be by bates number page, as follows: "App. 02."

5. JT Palmer was not served with the Subpoena until Friday, June 12. *Id*. Thus, by the time the Subpoena made it to JT Palmer, JT Palmer had only ***two business days*** to comply with the Tuesday, June 16 deadline.

6. Aside from denying JT Palmer "a reasonable time to comply," Fed. R. Civ. P. 45(d)(3)(A)(i), the Subpoena also demanded production of documents that would require disclosure of confidential, trade secret materials, the production of which would threaten to destroy JT Palmer's business. *See* Motion to Quash *infra*, pp. 7-14; App. 11-12.

7. Accordingly, once JT Palmer was able to engage counsel to respond, *see* App. 10, JT Palmer's counsel (J. Michael McBride) contacted Plaintiffs' counsel to discuss the Subpoena and to try to obtain an extension. App. 30. From his several conversations with Ms. Melissa Jones (Plaintiffs' counsel who signed the Subpoena), Mr. McBride was led to believe that an extension would be forthcoming pending the approval of the "partner in charge." *Id*.

8. After several follow-up calls to Ms. Jones between June 30 and July 2, Mr. McBride was eventually contacted on July 3 by the "partner in charge," Mr. Ryan K. Cochran. *Id*. For the first time, Mr. McBride learned that an extension would not be forthcoming; it was Plaintiffs' position that JT Palmer had already missed its compliance deadline and had to respond regardless. *Id*.

9. Moreover, what Mr. Cockran did not tell Mr. McBride was that on July 2, Plaintiffs had already filed a motion to compel in Tennessee, seeking an order from the Tennessee court compelling JT Palmer "to produce documents in accordance with subpoena." App. 30. In their motion to compel, Plaintiffs tell the Tennessee court:

> Numerous phone calls with JT Palmer's counsel were exchanged over the course of the past week, and although JT Palmer, through its counsel, requested CPF Dental to grant it an extension to object to the Subpoena, it was unable to confirm that any grant

> of an extension would result in JT Palmer producing the documentation requested by the Subpoena. JT Palmer's production pursuant to the Subpoena was due on June 25, 2020.

App. 35.

10. Notably, Plaintiffs' motion to compel does not include the Subpoena as an exhibit for the Tennessee court's review. App. 33-43. Nor does the motion give any information identifying where JT Palmer resides or where the Subpoena commanded compliance. *Id*. What Plaintiffs' motion does tell the court is "[t]he Subpoena was properly served on JT Palmer on June 11, 2020 in accordance with Rule 45(d)," that "[a]s stated in the subpoena, JT Palmer was required to produce any and all documents related to the requests set forth in the Subpoena no later than fourteen (14) days of service," and that "JT Palmer's production pursuant to the Subpoena was due on June 25, 2020." App. 35.

11. In truth, the Subpoena's "Proof of Service" shows that it was served on JT Palmer on Friday, June 12, 2020. App. 02. And what the Subpoena actually commands is for JT Palmer to produce all of the requested documents on "June 16, 2020 5:00 p.m. CST"—only two business days after JT Palmer was served. *Id*. And as previously stated, the Subpoena requires compliance in the Northern District of Texas. *Id*.

## II. Brief: Argument & Authorities.

### A. This is the only court with jurisdiction to rule on the Subpoena.

"Rule 45 requires that disputes related to non-party subpoenas be resolved locally to avoid imposing undue travel or expense burdens on non-parties who are challenging a subpoena." *Kilmon v. Saulsbury Indus., Inc.*, MO:17-CV-99, 2018 WL 5800759, at *3 (W.D. Tex. Feb. 13, 2018). A motion to quash a subpoena or to compel compliance is properly filed only in a court for the district where compliance with the subpoena is required. *See* Fed. R. Civ. P. 45(d)(2)(B), 45(d)(3(A); *see also MetroPCS v. Thomas*, 327

F.R.D. 600, 606 (N.D. Tex. 2018) ("Because the Subpoena requires compliance in Dallas, the Motion to Quash and Motion to Compel are properly filed in this Court, which, as required by Rule 45(d), is the court in the district where compliance with the Subpoenas is required."); *accord CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 710 (N.D. Tex. 2017) (recognizing "Rule 45's 'purpose of protecting nonparties is defeated if a party could demand compliance [in one location] and still require the nonparty to adjudicate a dispute over that subpoena in a distant forum") (bracketed language added) (quoting *Raap v. Brier & Thorn, Inc.*, 17-MC-3001, 2017 WL 2462823, at *2 (C.D. Ill. July 7, 2017) ("The court with jurisdiction to modify or quash a subpoena is the court for the district 'where compliance is required.'")).

Where, as in this case, the court issuing the subpoena (a Tennessee bankruptcy court) is not also the court in the district where compliance is required, the issuing court lacks jurisdiction either to compel enforcement or to quash the subpoena. *See Kilmon*, 2018 WL 5800759, at *3 ("A plain reading of the Federal Rules of Civil Procedure indicates that this Court, although the 'issuing court,' is not the 'compliance court' for purposes of the SCANA Corp. Subpoena and thus does not have jurisdiction to rule on Plaintiff's Motion to Compel Third Party."); *Diamond Consortium, Inc. v. Manookian*, 4:16-CV-00094-ALM, 2016 WL 9275972, at *3 (E.D. Tex. Oct. 25, 2016) ("Here, the subpoenas directed at Sunwest, Andrew Stern, and Frederick Stern issued (appropriately) from this Court. Nevertheless, these subpoenas require compliance in Dallas, Texas—in the Northern District of Texas. As a result, this Court lacks authority to quash or modify these subpoenas in the first instance.") (parenthetical in original).

Moreover, Rule 45's limitations on which court is authorized to enforce or to quash a subpoena involve important concerns beyond "protecting nonparties" from the burden

and expense of having "to adjudicate a dispute over that subpoena in a distant forum." *See Herrington*, 354 F. Supp. 3d 702, 710; *Kilmon*, 2018 WL 5800759, at *3. "A district court [] must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 45." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014); *see In re Sealed Case*, 141 F.3d 337, 341 (D.C.Cir.1998) (recognizing that in Rule 45 discovery transfer motions "a transferee court ... would often lack personal jurisdiction over the nonparty" and that "[t]he principle that courts lacking jurisdiction over litigants cannot adjudicate their rights is elementary, and cases have noted the problem this creates for the prospect of transferring nonparty discovery disputes").

Accordingly, because the court in the Northern District of Texas is the only court with jurisdiction over JT Palmer and the Subpoena, JT Palmer has moved in this Court for an order quashing the Subpoena. Additionally, JT Palmer does not consent to the Tennessee court's exercising jurisdiction over this matter or JT Palmer.

**B. The Subpoena failed to allow a reasonable time to comply.**

Rule 45 provides that a subpoena "must" be quashed if it "fails to allow a reasonable time to comply." Fed. R. Civ. P. 45(d)(3)(A)(i). Rule 45 does not state what constitutes "a reasonable time." Nonetheless, JT Palmer submits that Plaintiffs' subpoena—commanding compliance within only two business days of service—does not constitute a reasonable time to comply. *See, e.g.*, *United States v. Cabelka*, 7:16-CV-00126-O-BP, 2017 WL 11477131, at *1 (N.D. Tex. Oct. 23, 2017) (denying motion to compel production of documents pursuant to subpoena where non-party "was only given fifteen days' notice to produce the requested documents," explaining "[a]lthough Ms. Slate did not file an objection or a motion to quash/modify the subpoena as indicated

under Rule 45, Ms. Slate was not given 'reasonable time' to comply with the subpoena duces tecum" and "[b]ecause Ms. Slate was untimely served, the Court finds that Ms. Slate had no obligation to produce the documents requested"); *Hall v. Louisiana*, CIV.A. 12-657-BAJ, 2014 WL 1652791, at *13 (M.D. La. Apr. 23, 2014) (time periods of 9 and 12 days to comply with subpoenas "are clearly unreasonable, particularly when the 14 day period for serving objections under Rule 45(c)(2)(B) is generally considered a reasonable time"); *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 1:07-CV-956, 2009 WL 724001, at *1 (W.D. Mich. Mar. 10, 2009) ("Two business days, more or less, even with the intervening weekend, is not an adequate period of time to comply with a subpoena."); *Paul v. Stewart Enterprises, Inc.*, CIV. A. 99-3441, 2000 WL 1171120, at *1 (E.D. La. Aug. 16, 2000) ("One business day's notice is clearly unreasonable in light of the requirement in Fed.R.Civ.P. 45(c)(2)(B) that a subpoenaed person be permitted 14 days to object.").

Accordingly, JT Palmer requests the Court to enter an order quashing the Subpoena.[2]

**C. The Subpoena requires production of confidential, trade secret information.**

Rule 45 provides that "the district where compliance is required may, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). Similarly, both Texas law and federal law provide for protections against

[2] Moreover, the fact that the Subpoena's "Exhibit A" "requests" production in 14 days in Tennessee is of no moment. App. 05. The actual Subpoena ***commanded*** production in the Northern District of Texas on June 1. Any argument that the Subpoena somehow commanded JT Palmer to produce documents in Tennessee 14 days after service would render the Subpoena fatally defective on an additional ground too. *See* Fed. R. Civ. P. 45(d)(3)(A)(ii) ("the court for the district where compliance is required must quash or modify a subpoena that ... requires a person to comply beyond the geographical limits specified in Rule 45(c)"), 45(c) (limiting the place of production to "a place within 100 miles of where the person resides, is employed, or regularly transacts business in person").

those who would misappropriate a trade secret. *See* Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.002(1), (3), (6), 134A.004(a); The Federal Defend Trade Secrets Act, 18 U.S.C. 1836; P.L. 114-153, § 2, 130 Stat, 376 (2016).

A "trade secret" is broadly defined to mean:

> "(3) ... all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."

*See* 18 U.S.C. § 1839(3). Moreover, "the term 'owner, with respect to a trade secret, means the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." *Id*. at (4).

**1. Plaintiffs' production requests.**

The Subpoena purports to command production pursuant to the following requests set forth in Exhibit A.

> 1. Any and all Documents evidencing or relating to JT Palmer's or Ms. Shea's search for foreign accounts owned by Debtor or Mrs. Winfree;
>
> 2. Any and all Documents evidencing or relating to the identity of Hermitage Investment Group used in identifying any Foreign Account;
>
> 3. Any and all Documents evidencing that the funds in any Foreign Account originated in the United States of America; and
>
> 4. Any and all Documents evidencing that any Foreign Account belongs to Debtor and/or Mrs. Winfree.

App. 07.

### 2. Facts relevant to Plaintiffs' requests.[3]

Plaintiffs are apparently creditors of two individuals who filed for bankruptcy protection in Tennessee, Robert Terry Winfree and Oliva Winfree (Winfrees). In an effort to determine if the Winfrees were hiding money in undisclosed bank accounts, Plaintiffs hired a private investigation firm named, Hodges & Associates, LLC ("Hodges"). Hodges hired private detective Paul Pankiewicz, with ROS Consulting, Inc., who, in turn, hired JT Palmer. App. 10.

JT Palmer is an information research specialist. *Id*. JT Palmer was formed as a Texas Limited Liability company, with Ms. Judy Shea being the sole member and 100% owner. *Id*. JT Palmer's office is in Granbury Texas, which is also where Ms. Shea resides and conducts the business of JT Palmer. *Id*.

JT Palmer is in the business of performing confidential background research for clients who, like Pankiewicz, employ JT Palmer to conduct confidential research to discover assets, including foreign bank accounts, that individuals, like the Winfrees, may have hidden or secreted. *Id*.

#### a. The Trade Secret Information.

Over the years of performing this service, JT Palmer has developed private patterns, methods, techniques, processes, procedures and programs by which JT Palmer conducts data, or information searches and obtains this information—information that is itself hidden and not readily ascertainable, or discoverable. App. 11. The private patterns,

[3] The evidentiary support for the facts set forth in the paragraphs that follow are contained in the Affidavit of Judith Ann Shea, App. 10-12, and the attached exhibits.

methods, techniques, processes, procedures and programs that JT Palmer has developed to discover this hidden information are themselves not generally known or readily ascertainable. *Id*. Moreover, the private methods, techniques, processes, and procedures JT Palmer has developed also makes use of sources and vendors whose identities are themselves highly confidential. *Id*. Their identities and information sources are information that JT Palmer carefully guards and does not disclose. *Id*.

**b. JT Palmer is the owner of the Trade Secret Information.**

JT Palmer is the owner of these private patterns, methods, techniques, processes, procedures and programs. *Id*. As stated above, Ms. Judy Shea is 100% owner of JT Palmer, and she developed these private patterns, methods, techniques, processes, procedures and programs personally for use in the business of JT Palmer. *Id*.

**c. JT Palmer has taken reasonable measures to keep the Trade Secret Information secret.**

JT Palmer does not share or disclose to third parties, including its clients, the private patterns, methods, techniques, processes, procedures and programs it has developed and uses to discover information. *Id*. In fact, JT Palmer has a process by which it seeks to ensure the information which is discovered through the use of its private patterns, methods, techniques, processes, procedures and programs is kept secret. *Id*. Specifically, JT Palmer utilizes a "Customer Agreement," which clients sign and which clearly states:

> JT Palmer and Associates, LLC's reports contain confidential information and is not to be distributed to anyone other than the intended recipient. Distribution to any other entity in whole or in part is strictly prohibited. This information is for fact finding only and is not admissible in court.

App. 11, 22. The "Customer Agreement" that Pankiewicz signed in this matter is included at App. 22.

Similarly, the report JT Palmer prepares and provides to clients is entitled "CONFIDENTIAL" and clearly states:

> This report contains confidential information and is not to be distributed to anyone other than the intended recipient named above. Distribution to any other entity in whole or in part is strictly prohibited. This information is for fact finding only and is not admissible in court.

App. 11, 24. These documents are part of JT Palmer's efforts to ensure that the private patterns, methods, techniques, processes, procedures and programs themselves are kept secret and confidential. App. 11-12.

**d. The Trade Secret Information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.**

The heart of JT Palmer's business as a confidential information research specialist is its private patterns, methods, techniques, processes, procedures and programs by which it obtains information that is itself hidden and not readily ascertainable, or discoverable. App. 11-12. The methods by which JT Palmer finds secreted bank accounts is the very essence of its business. *Id*.

Disclosure of the private patterns, methods, techniques, processes, procedures and programs for obtaining that information is vital to JT Palmer's economic existence. *Id*. If anyone, including JT Palmer's clients (many of which are law firms) could obtain the information sought, there would be no reason to hire JT Palmer to obtain the information. *Id*. Disclosure of either the information or the private patterns, methods, techniques, processes, procedures and programs by which JT Palmer obtained the information, including JT Palmer's confidential sources and vendors, would enable anyone receiving the information to perform similar data searches, to discovery and utilize JT Palmer's

confidential sources and vendors, and thus to destroy JT Palmer's business as a confidential information research specialist. *Id*.

### 3. Plaintiffs' requests are broadly worded to require production of Trade Secret Information.

There is no question that Plaintiffs seek JT Palmer's Trade Secret Information. As Plaintiffs have said in their motion to compel, "JT Palmer's documentation evidencing ***the process used*** in order to reveal the existence of the foreign bank accounts will ultimately guide settlement negotiations among [Plaintiffs] and Defendants, and thus is absolutely necessary in order for the parties to move forward." App. 34 (emphasis added). At base, this is what each of Plaintiffs' requests seek.

With respect to Request No. 1, the breadth of the terms "any and all" and "evidencing or relating to" in the specific context of the "search" JT Palmer and Ms. Shea performed in looking for foreign accounts owned by the Winfrees seek and would require production of JT Palmer's Trade Secret Information. App. 07 The request is worded to include not only the confidential information JT Palmer may have discovered but also the private patterns, methods, techniques, processes, procedures and programs by which JT Palmer obtained the information.

Similarly, Request No. 2 includes the same, broad "any and all" and "evidencing and relating to" terms, this time tied to "the identity of Hermitage Investment Group" as that entity may relate to JT Palmer's "use [] in identifying any Foreign Account." App. 07. Whether and how JT Palmer may have used or obtained information from the Hermitage Investment Group to identify a foreign bank account or the actual information JT Palmer may have obtained fall squarely within JT Palmer's Trade Secret Information.

Similarly, Request No. 3 includes the same, broad "any and all" and "evidencing" terms, this time tied to "the funds in any Foreign Account originated in the United States." App. 07 Here again, Plaintiffs' request would require JT Palmer to disclose its confidential, Trade Secret patterns, methods, techniques, processes, procedures and programs by which JT Palmer could discover where "funds" "originated" and trace how they may have wound up in "any Foreign Account." This, again, strikes at the heart of JT Palmer's business.

Finally, Request No. 4 also included the same, broad "any and all" and "evidencing" terms, this time tied to "any Foreign Account belong[ing] to" the Winfrees. App. 08. Notably, the request is not limited to identifying "any Foreign Account belong[ing] to" the Winfrees. Instead, it seeks "any and all Documents evidencing ***that*** any Foreign Account belongs to" the Winfrees. The request again seeks the Trade Secret Information that JT Palmer used to discover the foreign bank accounts that JT Palmer identified and disclosed to Pankiewicz.

In sum, each request seeks "trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). Accordingly, JT Palmer requests the Court to quash the Subpoena on this ground as well. *Id*.

### D. The Court should deny Plaintiffs' intrusive short-cut through JT Palmer's Trade Secret Information.

JT Palmer has already provided and Plaintiffs already have information identifying the foreign bank accounts that JT Palmer discovered. App. 12. As JT Palmer has already told Pankiewicz, JT Palmer has no information from which it can confirm that the foreign

accounts previously identified belong to the Winfrees other than accountholder names. App. 12, 26.

How JT Palmer found those accounts is not probative; it's their existence that is probative. And there is a multitude of less intrusive methods by which Plaintiffs can go about trying to connect dollars that may have come out of the Winfrees' other known bank accounts in the United States and may have gone into those accounts overseas. Subpoenas to the banks themselves would yield the information Plaintiffs' seek, verify the existence and ownership of those account, and do so without intruding on JT Palmer's Trade Secret Information or jeopardizing JT Palmer's livelihood.

In short, if there is a money trial, it starts with the Winfrees' known bank accounts. And Plaintiffs already know specific foreign banks where they (but not JT Palmer) believes the trail may end. JT Palmer could not and did not confirm that the trail ends in any of those accounts. Requiring JT Palmer to disclose "the process used in order to reveal the existence of the foreign bank accounts," App. 34, does not nothing but disclose JT Palmer's Trade Secret Information and jeopardize its entire business.

## III. Conclusion and Prayer.

For all of the reasons stated above, Non-Party JT Palmer & Associates requests the Court to grant this Motion to Quash. JT Palmer requests such other and further relief to which it may be entitled, including all relief afforded pursuant to Rule 45(d)(1), Fed. R. Civ. P.

Respectfully submitted,

By: */s/ Charles W. Fillmore*
H. Dustin Fillmore III
State Bar No. 06996010
Charles W. Fillmore
State Bar No. 00785861

THE FILLMORE LAW FIRM, LLC
1200 Summit Avenue, Suite 860
Fort Worth, Texas 76102
(817) 332-2351 (office)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

*/s/ J. Michael McBride*
J. Michael McBride
Texas Bar No. 13332100

J. MICHAEL MCBRIDE, P.C.
6420 Southwest Blvd., Suite 112
Fort Worth, Texas 76109
(817) 877-1824 (office)
(817) 877-1797 (fax)
jmm@mcbridelegal.com

ATTORNEYS FOR NON-PARTY J.T. PALMER & ASSOCIATES, LLC

**CERTIFICATE OF SERVICE**

On July 10, 2020, this Motion was served on the following counsel for Plaintiffs TN Dental Professionals, P.C. and CPF Dental, LLC via U.S. Post Office Mail, return receipt requested, 7001 2510 0002 0581 0972:

Ryan K. Cochran
Melissa W. Jones
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
ryan.cochran@wallerlaw.com
melissa.jones@wallerlaw.com.

*/s/ Charles W. Fillmore*